UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNIVERSAL FORUM OF CULTURES BARCELONA 2004, S.L., IN LIQUIDATION, | ) ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) ) |
| COUNCIL FOR A PARLIAMENT OF THE WORLD'S RELIGIONS, | ) ) ) ) |
| Respondent. | ) |

Case No. 12-CV-3542

Judge John W. Darrah

## MEMORANDUM OPINION AND ORDER

Petitioner Universal Forum of Cultures Barcelona 2004, S.L., in liquidation (the "Forum") has filed a petition to confirm a foreign arbitral award in its favor and against Respondent Council for a Parliament of the World's Religions (the "Council"). The Council has moved to dismiss that petition pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to refuse to confirm the foreign arbitral award. The Forum has filed a cross-motion to confirm the foreign arbitral award. For the reasons discussed below, the Council's motions are denied; and the foreign arbitral award in the Forum's favor is confirmed.

### BACKGROUND

In June 2003, the Forum, the Council and a third party, the UNESCO Centre of Catalonia (the "Centre"), finalized an agreement to hold an "international interreligious event" in Barcelona, Spain, called the "2004 Parliament of the World's Religions" (the

"Parliament"). The parties executed a Memorandum of Understanding (the "MOU"), a twenty-seven page document dated June 4, 2003, which "govern[ed] the relationship" between the Forum, the Council, and the Centre. According to the MOU, the Forum and the Council were the "governing" parties and "responsible for all matters pertaining to policy, procedures, operations, programming, and funding" of the Parliament. In paragraph 20, entitled "Conflict negotiation process," the MOU provided the following conflict resolution process:

> This Agreement is governed by Spanish Law. In the event that conflicts, disagreements, misunderstandings, or differences cannot be resolved through the normal and established channels of communication and authority, the following two-step process would [sic] be undertaken:
>
> - Three principal Executive officers of the COUNCIL, [THE FORUM], and the CENTRE would seek to mediate these matters to the satisfaction of all parties; and if unsuccessful,
>
> - The parties accept the institutional arbitration of the Court of Arbitration of Barcelona, of the Catalan Association for Arbitration, which is in charge of appointing the arbitrator or arbitrators and the administration of the arbitration. The parties herein agree to comply with the arbitration decision. The parties agree that the Arbitration will be according to Law.

(MOU, p. 26.)

Shortly after the Parliament's "international interreligious event" ended, the Forum and the Council began to disagree about how much money the Council owed the Forum. From September 2004 through January 2005, the parties exchanged several offers and counteroffers. On January 31, 2005, the Forum sent to the Council a short, two-page letter regarding the Council's outstanding debt of $565,159 (the "2005 Letter Agreement"). (*See* Resp.'s Memo. in Support of Mot. to Dismiss, Exh. B.) In that letter,

2

the Forum proposed a payment schedule for the Council to pay back its debt through 2008. (*See* Resp.'s Memo. in Support of Mot. to Dismiss, Exh. B.) The Council signed and accepted that agreement on March 28, 2005. (*Id.*) However, the Council failed to make all the payments as set forth in the 2005 Letter Agreement. On February 10, 2009, the Forum made a demand for payment on the outstanding debt of $238,592.52. The Council made a partial payment of $25,000 in November 2009 but made no further payments. (*See* Petition Exh. 2, Final Arbitration Award, at 11.)

On May 20, 2010, the Forum convened an arbitration proceeding in the Arbitration Court of Barcelona, invoking the arbitration clause contained in paragraph 20 of the MOU. In its submission to the Arbitration Court on June 24, 2010, the Council acknowledged the existence of the arbitration agreement in the MOU, but argued that the mediation step of paragraph 20 had not been satisfied. (*Id.* at 8.) Both parties requested that the Arbitration Court appoint a sole arbitrator, and Carlos Valls Martinez was appointed. The Council was represented by two Barcelona-based attorneys, Cesar Rivera and Carlos Gomez. On April 8, 2011, the initial arbitration proceedings commenced, in the presence of the reporting magistrate of the Arbitration Court of Barcelona, the arbitrator, and the Forum, but without the appearance of the Council. (*Id.* at 9.)

On April 27, 2011, the Forum submitted its Request for Arbitration outlining its claims and demands. In its Response to the Request, the Council acknowledged that the MOU "effectively included in its clause 20 a valid arbitration agreement," but repeated its objection that the arbitration clause was not in effect because the "first phase" of mediation had not taken place and, for that reason, requested that the MOU be declared

3

null and invalid. (*Id.* at 11.) The Council further requested that the arbitrator "declare the lack of competence of this Arbitration Court … since the [Forum] has failed to comply with the measures agreed upon which were to be pursued prior to proceeding to arbitration." (*Id.* at 12.)

On September 9, 2011, the arbitrator issued an award in the Forum's favor in the total amount of US $276,196.22 (the "Award").[1] The arbitrator also issued a lengthy decision, in which he analyzed and rejected the Council's objection regarding the mediation phase of the MOU. (*Id.* at 17-35.) On May 9, 2012, the Forum filed its petition to confirm the foreign arbitral award with this Court.

## DISCUSSION

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 201 *et seq*, incorporates into federal law the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1985, commonly known as the New York Convention (the "Convention"). *See Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 588 (7th Cir. 2001) (*Slaney*). The FAA provides for the enforcement of foreign arbitration agreements and awards and vests federal district courts with original jurisdiction over actions "falling under the Convention." 9 U.S.C. § 203; *see also Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1291 (11th Cir. 2004) (*Czarina*). Under the FAA, a party to an

---

[1] The award was comprised of the following: (1) award on the principal claim in the amount of US $213,592.52; (2) award of interest in the amount of US $22,488.65; (3) award of attorney fees in the amount of US $15,211.34; and (4) award of arbitrator fees in the amount of US $24,903.70.

4

arbitration may seek confirmation of a foreign arbitral award in a district court within three years of the award. 9 U.S.C. §§ 203, 207.

*The Convention's "Agreement In Writing" Prerequisite*

As a threshold matter, a district court must determine if it has jurisdiction under the FAA to enforce an arbitral award. An arbitral award "falls under" the Convention and the FAA so as to grant jurisdiction when: (1) there is "an agreement in writing" to arbitrate; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) there was a commercial legal relationship; and (4) one party to the agreement is not an American citizen. 9 U.S.C. § 202; Convention, Art. II, III, IV, 9 U.S.C. § 201 (historical and statutory notes); *see also Francisco v. Stolt Achievement MT,* 293 F.3d 270, 273 (5th Cir. 2002); *Czarina,* 358 F.3d at 1291. Consequently, an arbitration award will not be enforced if a party fails to satisfy the Convention's "agreement-in-writing prerequisite." *Czarina*, 358 F.3d at 1291.

Whether an "agreement in writing" to arbitrate exists is determined under state contract law. *See First Options v. Kaplan,* 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *see also Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002) (*Howsam*) (stating that "a gateway dispute about whether the parties are bound by a given arbitration clause raises 'a question of arbitrability' for a court to decide"). Consequently, the parties' contract is examined under Illinois, and not Spanish, law. Under Illinois law, the analysis starts by "addressing whether the 'basic ingredients' of a contract — offer, acceptance, and consideration —

5

are present." *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. 2d Dist. 2006).

In this case, the parties appear to agree that the MOU is a valid agreement. However, the Council argues that the 2005 Letter Agreement was either an "accord and satisfaction" that replaced the MOU or a contract under the doctrine of merger that superseded the MOU agreement. The Council contends there is no "agreement in writing" to arbitrate because the 2005 Letter Agreement does not contain an arbitration clause and, as such, the Court does not have jurisdiction over the Forum's petition.

This is the first time the Council has raised this argument. In the underlying arbitration, the Council never claimed that the 2005 Letter Agreement, as opposed to the MOU, was the governing contract between the parties. Rather, in direct contrast, the Council acknowledged that the MOU was the relevant contract and had "a valid arbitration agreement." Indeed, the Council *relied* on the MOU because its objection to the arbitration was based entirely on the mediation language found in paragraph 20 of the MOU.

The Council's reliance on the MOU in the underlying arbitration belies its newly raised assertion that the 2005 Letter Agreement is the governing contract. There is no evidence that the parties intended to extinguish or supersede the MOU when they executed the 2005 Letter Agreement. *See, e.g., Grundstad v. Ritt*, 166 F.3d 867, 871 (7th Cir. 1999) ("Under Illinois law, all the parties to the original agreement must assent to a novation, that is, to the substitution of a new debt or obligation for a previous debt or obligation."); *Thomas v. Frederick J. Borgsmiller, Inc.*, 508 N.E.2d 1235, 1238 (Ill. App.

6

5th Dist. 1987) ("The essential elements of a novation are: (1) a previous, valid obligation; (2) a subsequent agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract."). The 2005 Letter Agreement contains no mention of an intent to create a new contract that would replace the MOU. Rather, the 2005 Letter Agreement simply modifies the payment terms of the MOU – a modification that appears to be solely to accommodate the Council's difficulty in paying its debt to the Forum. Therefore, because the MOU contains a valid arbitration clause, the MOU clearly satisfies the Convention's "agreement in writing" prerequisite.[2]

*Defenses to An Arbitral Award Under The Convention*

Since the MOU "falls under" the Convention to satisfy the jurisdictional prerequisite, the analysis next turns to whether the arbitral award should be confirmed. The purpose of the Convention is to effectuate arbitration proceedings and their enforcement in international contracts and to unify the standards by which arbitration agreements are observed and arbitral awards are enforced. *See Scherk v. Alberto-Culver*

---

[2] The Forum argues that the Council waived this argument by failing to raise it in the underlying arbitration. *See, e.g., Ganton Techs. v. UAW, Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) ("The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award) (citation omitted); *National Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960-61 (7th Cir. 1993) ("Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would undermine the purpose of arbitration") (citation omitted); *see also Slaney*, 244 F.3d at 591 ("Slaney could not sit back and allow the arbitration to go forward, and only after it was all done . . . say: oh by the way, we never agreed to the arbitration clause. That is a tactic that the law of arbitration, with its commitment to speed, will not tolerate.") (quotation omitted). However, because the MOU contains a valid arbitration agreement that falls under the Convention, the waiver argument does not need to be addressed.

*Co.*, 417 U.S. 506, 520 (1974). To this end, the FAA mandates that the confirming district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C. § 207. Thus, the arbitral award must be enforced unless the party opposing enforcement proves one of the enumerated defenses under Article V of the Convention. *See Slaney*, 244 3d at 588; *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2003).

Article V(1)(c) of the Convention provides that an award will not be enforced if the party furnishes proof that the award "contains decisions on matters beyond the scope of the submission to arbitration." The Council claims that the arbitrator acted "beyond the scope of the submissions" because he "erroneously made his own decision as to his jurisdiction to conduct the arbitration" and "ignored the … arbitration clause requiring mediation of the matter." The Council allots roughly one page in its opening brief and less than two pages in its reply brief to this argument. The Council has failed to carry its burden of proving this defense.

In *Howsam*, the Supreme Court held that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." 537 U.S. at 84 (emphasis in original) (internal quotations omitted). Therefore, "questions such as whether prerequisites to arbitration have been met, or questions of waiver, delay or other defenses to arbitrability, should be determined by the arbitrator." *Lumbermens Mutual Casualty Co. v. Broadspire Mgmt Servs.*, 623 F.3d 476, 480 (7th Cir. 2010) (*Lumbermens*); *see also John Wiley & Sons, Inc. v. Livingston*, 376

8

U.S. 543, 557 (U.S. 1964) (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration).

In this case, whether the MOU requires mediation before arbitration is a "procedural question over a precondition to arbitration" that is for the arbitrator to decide. *See Lumbermens,* 623 F.3d at 483. Consequently, the arbitrator did not act "beyond the scope of the submission to arbitration." Instead, in a discussion of approximately twenty pages, the arbitrator thoroughly examined and rejected the Council's argument that the parties had to mediate before proceeding to arbitration.

Specifically, the arbitrator studied and relied upon the language of the MOU, which provides that "the parties *would seek* to mediate these matters to the satisfaction of all parties" before submitting to arbitration. (MOU at 6.) (emphasis added).[3] The arbitrator concluded that this language meant that mediation was not a mandatory step but, rather, that the parties only had to attempt it. According to the arbitrator, the Forum had "complied with its obligation to attempt to engage in mediation" and had sent a letter to the Council that requested mediation. In contrast, the arbitrator found that the Council had failed to attempt to mediate and instead had "thrown up obstacles through its response and stalling tactics," including possibly manipulating a key document. The arbitrator further concluded that the Council's mediation objection "was solely intended

---

[3] In its briefs, the Council selectively, and disingenuously, quotes the MOU as requiring the parties "to mediate the matters," instead of the more accurate statement that the parties "would seek to mediate the matters." (Council Br. at 9.)

9

to delay due compliance with its payment obligation." Because the arbitrator properly decided a procedural question related to a condition of arbitration under the MOU, the Council has failed to establish a defense to the arbitral award.

*Evidentiary Hearing*

Lastly, in its reply to the Forum's cross-motion, the Council contends that the Court should order discovery and hold an evidentiary hearing. The Council alleges that there are two "factual disputes": (1) a factual dispute regarding the "arbitrability of the parties' various agreements"; and (2) a factual dispute regarding the applicability of Spanish law. Neither of these alleged "factual" disputes warrants additional discovery nor an evidentiary hearing.

Confirming a foreign arbitral award is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997) (internal quotation omitted). Thus, the scope of judicial action upon an award is "very limited." *Id.* (internal quotation omitted). Evidentiary hearings regarding confirmation of a foreign arbitral awards involve issues such as misconduct or bias of the arbitrator that "cannot be gauged on the face of the arbitral record alone." *Legion Ins. Co. v. Insurance General Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987) (*Legion*) (finding that no hearing was required to confirm arbitration award). Indeed, "[t]o permit time-consuming, costly discovery simply to replicate the substance of the arbitration would thwart its goal." *Id.* at 543.

The Council has not alleged any factual disputes that go beyond the arbitral record. *See Legion*, 822 F.2d at 543. Regarding the alleged dispute of arbitrability, the Council has merely rehashed its argument regarding whether the MOU is the governing contract. Further, the Council claims that whether Spanish law applies presents a factual dispute, but this is a question of law. Both of these alleged "disputes" have been addressed and resolved in the discussion above. Consequently, there is no need for additional discovery or an evidentiary hearing.

## CONCLUSION

In light of the foregoing analysis, it is ordered that: the Council's Motion to Dismiss [12] is denied; the Forum's Cross-Motion to Confirm Foreign Arbitral Award [23] is granted; and the clerk of the court is directed to enter judgment in favor of the Forum confirming the arbitral award and to close the case.

Date:     March 21, 2012

JOHN W. DARRAH
United States District Court Judge